All right, let's call the next case. 21-6020 Cobb v. Tinker Federal Credit Union. And for the appellant, Mr. Donahoe. Yes, Your Honor. My name is Lawrence Donahoe, and I represent Mr. Galen Cobb, who is the appellant. And I want to thank the Tenth Circuit for hearing these oral arguments. For the purpose of clarity, I would like, if it's agreeable, to refer to the appellees as Tinker and the appellant and original defendant as Cobb. The thrust of this case is abuse of process. And abuse of process that began back on September the 8th of 2006 when a minute order was entered and there was no journal entry provided at all. If you went back and looked through all of the documents, as I did, through the docket sheet, you saw two renewals of judgment. You saw all of these various 44 garnishments. You saw the appearance of a judgment all the way through. And our position is that when the Civil Court of Appeals came down with their decision on October 17, 2019, that was the date that triggered the statute of limitations for all of the ongoing abuse of discretion. Because prior to that time, there was the appearance and the argument that there was always a judgment there. And even Judge Stewart, when he entered his judgment for the non-protont, he stayed everything pending the appeal as far as collections. And no two courts can have jurisdiction at any one time. And when the Court of Appeals had jurisdiction, I do not believe that we could have brought this case until we had a resolution that there was no judgment. And so, once the judgment was vacated, once the court said, no, there wasn't a judgment, there wasn't a judgment related back to 2006, at that point, all of these things became right. Because before that, there was the appearance and the anchor made the argument all the way through that a judgment was there. Counsel, you started out by saying that the abusive process started in September 2006, when no journal entry was entered, and then there's a series of garnishments. So, could you explain why you couldn't have filed your claims when your appeal was pending before the Oklahoma Civil Court of Appeals? I believe that the Oklahoma Civil Court of Appeals had jurisdiction. I believe that until the Oklahoma Civil Court of Appeals reversed Judge Stewart's judgment, non-protont, that the judgment was in place, it was under attack within the decision-making capability of the Court of Appeals. And until the Court of Appeals ruled, it would appear to me and to the whole world, I think, that there was a judgment in place that one court had authority over, and until that court entered a ruling, because if they had entered a ruling affirming Judge Stewart's decision, I had no case. Because it went back to the 2006 Judge Rick's minute entry. So, my case was completely on hold. It only existed if there was no judgment in this case. And the time we determined that there was no judgment was when I was sitting in the courtroom back in 2016 on October 11th, and it wasn't in the docket. That's the first time I've had any attorney representing him. Isn't there still the non-protont litigation pending in the Oklahoma Supreme Court? No. What's the status of it? The non-protont was not accepted by the Oklahoma Supreme Court, and that is a final decision. The non-protont is vacated. It no longer exists, and the Court of Appeals went so far as to say that it was on October 17th, 2019, that there was no judgment in this case on the mandate issue. So, the mandate issue there, the Supreme Court didn't look at the case, and that particular case, as far as the non-proton, was over. And they can't, and Tinker can't, I thought they saw an opportunity for an additional proceeding that would comply with the Court of Appeals decision. I'm not sure what you're talking about. Can you give me a little clarification? Well, is there any way for Tinker still to seek a non-proton order regarding the arnishments in this case? I do not believe there is, no. Relatedly, the Oklahoma Greenberg case, as I read it, suggests that you don't have to have a final judgment. It says something to the effect that even if a case is not determined under Oklahoma's interpretation of the abusive process claim, it can still be each time a garnishment was wrongfully undertaken without the journal entry. Well, the Greenberg case is important in a lot of ways. Discovery still applies in the Greenberg case. And the Greenberg case said abusive process claim occurs when the process is abused and damages are incurred regardless of when the action is determined. So, I've gone through the Greenberg case, and there are many things in the Greenberg case that appear to benefit the opposing counsel. But I think that Greenberg basically says that the statute of limitations has not necessarily run on that claim at this time. I don't think Greenberg was definitive on that. Well, you just read a key sentence out of Greenberg. Do you have any authority that goes the other way that says you wouldn't have been allowed to bring a suit for the abusive process until the judgment was entirely cleared up? You say, I believe, but I don't see any. No, I do not have any authority to back that up. The problem is I cannot say that this issue has ever really been addressed by this or any other court, because this is a very specific set of facts that have come into play here. An ongoing garnishment with no judgment, 44 garnishments, never had a judgment. Well, if we disagree with you on that point, then all of the garnishment, abusive process, those are all barred by statute of limitations. Do you agree with that or no? I do not agree with that. My position is that the statute of limitations, that all of the actions, we've got a chain here. We've got links in the chain that were tied together, starting with the failure to enter a judgment back when the minute entry was drafted and filed by Judge Ricks put into the case. Then we go through failure to prepare a judgment. We go through two renewals of a non-existent judgment. We go through 44 issues of garnishment. We go all the way to the point where we were in court with Judge McElwee and there was no judgment. At that point, she said, whoa, we're not going forward. We stopped. We went down and looked. There wasn't anything in the court file anywhere. That same day, they filed the application non-proton. We all got bogged down in that battle because the application non-proton was based on a minute entry. I have never seen the court consider a minute entry to be a judgment. That's the allegations that Tinker made and that Judge Stewart brought. Then we took it to the Court of Appeals. At that point, I think that all the links of the chain were still intact. From the beginning with no judgment, the garnishments with no judgment, all of those things that had gone on along the way, the statute should be told because of the exceptional circumstances. Well, counsel, that actually raises two questions I'd like to pose to you. The first one is as to your argument that your abuse of process claim most recently accrued when the mandate from the Oklahoma Court of Civil Appeals issued in October 2019. Didn't you first make that argument in your Rule 59 motion in district court? I believe that is correct, Your Honor. Why wouldn't that argument be waived for purposes of appeal because you didn't raise it until then? Your Honor, we raised all of the facts surrounding it. We did not raise it in that particular format. This court will have to determine if it was raised, but all of the arguments that were raised went specifically, I believe, to that issue. All right. All right. Is the problem that kicked this thing off, the failure to make the journal entry, this maybe is a little bit more merits oriented, was that a ministerial mistake by the court or are you arguing some type of bad faith or fraud on the part of Tinker? It was. I do not believe that it was a ministerial mistake of the court because we went through every file that was there, all of the arguments that were made, and if we look at the Court of Appeals decision on October 17, 2019, they said there wasn't any judgment. It couldn't be recreated as a non-protunct judgment from a minute or so. At that point, I think we were free and we had no judgment. We had no claim of judgment. We had Mr. Cobb. He was probably very unique. I don't know if it was just Mr. Cobb that this happened to because it could have happened other times. But in this particular case, they chased him. How do you renew two judgments, two renewals of judgment without everyone noticing that you don't have a judgment? As hard as it was to figure it out, we did figure it out. Judge McElwee stopped everything. There are exceptional circumstances. Absent this court stepping in, in my opinion, it's a wrong without a remedy because justice in America, there is no wrong without a remedy and there wasn't a time when there was clearly abuse of process that could be planned that wasn't already in a specific court. But when the mandate came down in 2019, we filed with the Western District within 10 months. So, we were timely on our filing based on the date of the mandate. We were not timely if you take the position that every time they did something wrong that continued like links of a chain since 2006. Every time they did something wrong, they were cleared in two years if it wasn't caught and picked up by Mr. Cobb. But I think these that justice can only be had if this court makes a decision because there's not anything else out there. I have looked. The other side has looked. And there have been attempts to address this issue in the past, but there's not any answer to Mr. Cobb's problem. All right, counsel. We appreciate your argument. Your time has expired. Let's hear from Mr. Donchin. Thank you, Your Honor. For Police Court, I'm David Donchin. We have two sets of defendants. Ms. Clifton represents Tinker Federal Credit Union. I represent the remainder of the defendants, which are the lawyers and the law firms. I want to start off. There's clearly three issues in this case is whether the statute of limitations as to the abuse of process and the Federal Debt Collection Protection Act applies and was that was appropriately applied by the district court. And then we have a cross appeal for our attorney's fees, my client's attorney's fees in regard to that matter. I want to start off with something that you all picked up on as well, and that is counsel start off his argument by saying that the abuse of process began September 8, 2006. And I want to point out first that under 15 U.S.C.A. 1692K, under Part D, the jurisdiction, it provides an action to enforce any liability created by this subchapter may be brought in any appropriate United States District Court without regard to the amount of controversy or in any other court of competent jurisdiction within one year from the date on which the violation occurs. That's a one-year statute of limitations from when the violation occurs. And what he tells you on one hand is the violations were the 44 garnishments, the hearing on assets, the two renewals. That specifically says that at that time, that one year starts running from the hearing on assets. It runs from the individual, these are separate and discrete individual actions that he claims are violations of the Federal Debt Collection Act. So clearly the one year statute of limitations starts running from that date. Well, counsel, the hearing on assets was October 2016, correct? You're saying, and you're saying that that's the latest potential accrual date? Yes, sir. Why wouldn't the defendant's conduct of seeking the non-protunct order and defending it on appeal be a continuation of the alleged abusive process? Because what he is claiming is a violation of the act and abusive process. It's the individual act of the hearing on assets. It's the individual act of each garnishment. And so I understand that there's an issue on a non-protunct. But at the end of the day, what's the violation of the abusive process are those acts that he's complaining about and suing upon? So yes, there's, and I'll go back to the Greenberg case, which I think was mentioned earlier in his argument. And I think that is a dispositive case as well, that the court, there's two things we look at in the Greenberg case. And I'll quote from section six of that opinion, which starts at page 905, talks about the elements of the tort, the improper use of the process. Number two, primarily for an ulterior or improper purpose. Three, with resulting damage to the plaintiff, resulting from asserting the misuse. The court states then that these principles impel the conclusion that it is not the commencement or the termination of a proceeding, which triggers the limitation period for this tort. Rather, it is the actual accrual of the order of non-protunct. The Greenberg case and the McGinnity case both provide, Oklahoma law says that the abusive process starts with the act itself and that the underlying case does not have to come to termination. So the order of non-protunct was part of the case as it went to termination. And the elements of the abusive process aren't reliant upon the case moving forward and what happens in the case. The question is, what was the violation? What was the wrongful act? And those occurred according to Plaintiff's counsel, September 8th, 2006, and the 44 garnishments and the hearing on assets afterwards. Once Tinker successfully obtained the non-protunct order, that basically retrospectively ratified all of Tinker's conduct. And it seems to me that Mr. Donahoe, whatever, would have a Rule 11 or a frivolous lawsuit claim if he tried to bring an abusive process claim in the face of a valid non-protunct order, even if that was being abused. It appears that at least the trial court had ratified any conduct here as being perfectly consistent with its order of judgment. I understand your question, Your Honor, and I think that's a good question. I think it also goes back to what's the holding in Greenberg and McGinnity, and that is you don't have to wait for the conclusion or termination of the case itself. And I'll go back to the idea that in October of 2016 is the latest date of the last hearing on assets. He could have brought that and was mandated to bring it within one year of that date as a violation. So with that one-year statute of limitations, he has to bring that case within that one year. Well, wait a minute. How has he satisfied all the elements of an abusive process claim under Oklahoma law? Well, honestly, I don't think he can because it goes back to what's abusive process. You also go back to what was the intent of bringing the case. Going to the merits and substance of the case, he can't. This was an action to collect on a debt that ultimately resulted in a judgment that allowed him to collect that debt. You know, if the question earlier was, was this a ministerial issue? Clearly, there was a mistake. There was a hearing as evidenced by the docket sheet that the court conducted a hearing on the motion for default and granted judgment per journal entry. Why the journal entry didn't get filed, I don't know. Clearly, somebody made a mistake, a ministerial mistake, a clerking mistake. But at the end of the day, this was a case that started and ended with a collection for a debt and a judgment for that amount. The court of appeals did send it back down to have the amount changed because there were amounts collected during the garnishments. So they corrected the your question. I apologize if I didn't. The part I didn't hear an answer to was the chief's question about wouldn't there be a rule 11 sanction had plaintiff proceeded in view of an order non-proton and if there would be, how in the world could the plaintiff go ahead and file the suit? I don't know if there would be a rule 11 sanction for that because he would have to show a valid and reasonable basis to bring the suit. Now, for example, in a rule 11, was the suit brought? Did it have merit? Did it have a reason to be brought? If, and we disagree with this, but if he could show that there was a violation of the Fair Debt Collection Act, even if the rest of the lawsuit was proper, you can have a judge, you can have a case that proceeds in the court of law and still have a violation of the Fair Debt Collection Act. And if he could show that, yes, there was a violation of the act itself, he can proceed with that. And that's why the Greenberg case talks about how you don't have to wait for the conclusion of the case. If you can show there was a violation of the act, whether it's non-proton or otherwise, there's not a rule 11 violation at that point. For example, if the hearing on assets was improperly set, if the garnishments were improper and he can show that, then he has a one-year statute of limitations from when those wrongful acts occurred. That's what the jurisdictional provision of 1592 provides. Were you splitting your time with Ms. Clifton? Your Honor, thank you. Yes. And I told the clerk that she's got a separate defendant and I respect that. I know most of the actions come to me, but I would like to defer to her two or three minutes for whether she chooses. Thank you, Mr. Daunchin. May it please the court, Hillary Clifton for Tinker Federal Credit Union. I will speak for a few minutes and then defer back to Mr. Daunchin to the extent there's time remaining. To address, I believe it was Judge Phillips' question regarding whether Mr. Cobb would be subject to potential rule 11 sanctions should he pursue an action during the pendency of the appeal regarding the non-proton order. I think the answer to that is clearly no. Mr. the non-proton order was invalid at all times. All he would be required to show in a proceeding is that he has a good faith basis for arguing that the non-proton order was invalid and that the collection activities were invalid the entire time that they were proceeding without a valid journal entry of judgment in place. The legal fiction of the non-proton order would not prevent Mr. Cobb from making that good faith argument in a separate proceeding, which ties into another question that was raised early on regarding whether the, I believe, Mr. Donahoe raised the position that he did not believe another court could have jurisdiction over an action for a fair debt collection practices or abusive process violations during the pendency of the appeal. As I believe Judge Phillips asked and Mr. Donahoe conceded, he does not have authority to support that position. I think it's clear based simply on the fact that there was a separate proceeding brought in the Western District of Oklahoma, a separate court, a jurisdiction simply wouldn't have been at issue and wouldn't have been a bar to Mr. Cobb bringing a separate action for abusive process at any time, at any point during any of the proceedings. But if Tinker had won in the Oklahoma Court of Civil Appeals on the non-proton argument, wouldn't that blow up the abusive process case, basically nullify it? Well, Your Honor, respectfully, and setting aside the fact that this simply isn't an abusive process case on the merits, there's no collateral purpose that has been shown or even alleged, the abusive process claim would have failed regardless. But had the non-proton order been validated by the Oklahoma Court of Appeals, I don't think that would preclude Mr. Cobb from raising at least an argument, I don't think a successful argument, but an argument that the legal fiction of the non-proton order relating back to the collection activities would have precluded his abusive process claim for each discrete violation that occurred from 2006 to 2016. With that, I will just briefly address the court's attention to the standard of review for the equitable tolling issue. In Mr. Cobb's brief, he addresses the de novo standard of review, which is correct for granting a motion to dismiss under 12b-6. But as to the application of an equitable tolling doctrine, as well as the court's denial of the Rule 59e motion, the proper standard of review is abusive discretion. And there was no abusive discretion here with respect to the district court's rulings. And with that, to the extent Mr. Donjan, I've left you a little time, I would cede the rest of it. Thank you, Your Honor. The only other thing I'd raise is we also have a cross appeal for the attorney's fees, asking you to remand it back to the district court to make a finding on the claim for fees under the Oklahoma Consumer Protection Act, the constitutional issues he raised under the Fifth and the Fourteenth Amendments, and the negligence claims. The statutes that we've cited involved require the court to make a finding after the claims have been adjudicated as to whether those claims are asserted in bad faith, whether they were well-grounded in fact, or whether it was unwarranted by existing law. Because the way that the motion dismiss was handled, those three items weren't really discussed in his order on the motion dismissed since claims counsel didn't contest them. We're just asking it be remanded back for that reason. That's it. Thank you. We appreciate your participation this morning. Counselor, you're excused and the case is submitted.